UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FLIGHT SOURCE INTERNATIONAL
INC., a Florida Corporation,

    Plaintiff,

vs.                                                      Case No. 8:08-CV-00739-JDW-MAP

CAROLEX AIR, LLC, a Tennessee limited
Liability company, EXPRESS JETS, LTD,
and Jason LEAVELLE, individually,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** are Defendants Carolex Air, LLC, Express Jets, Ltd, and Jason Leavelle's Motion to Dismiss Complaint for Lack of Personal Jurisdiction (Dkt. 5), and Plaintiff Flight Source International, Inc.'s Response in opposition. Upon consideration, the motion to dismiss is **GRANTED.**

*Background*

Plaintiff Flight Source International, Inc. ("Plaintiff") commenced this action against Defendants Carolex Air, LLC ("Carolex"), Express Jets, Ltd. ("Express Jets") and Jason Leavelle ("Leavelle") alleging breach of contract, tortious interference with a contractual relationship, tortious interference with an advantageous business relationship and violation of Florida's Deceptive and Unfair Trade Practices Act. (Dkt. 1). The parties to this action are diverse, and the amount in

1

controversy exceeds $75,000.00, exclusive of interest and costs. (Dkt. 1, ¶ 6).[1]

The facts alleged by Plaintiff are as follows. Plaintiff's representative, Victor Valdez, met with Plaintiff's client, Joaquin Tomayo, in Mexico and presented him with specifications on approximately ten different aircrafts for potential purchase by Tomayo. (Dkt. 1, ¶ 9). Tomayo expressed an interest in purchasing three of the ten aircrafts, among them the Lear Jet with serial number 114, which was owned by Defendant Carolex. (Dkt. 1, ¶¶ 9, 10, 11). Valdez and Tomayo arranged to meet in St. Petersburg, Florida to inspect the airplanes in which Tomayo had indicated an interest. (Dkt. 1, ¶ 10). In light of Tomayo's interest in the Lear Jet with serial number 114, Valdez contacted Defendant Leavelle, owner of Express Jets, and arranged for Leavelle to be present at the meeting in St. Petersburg. (Dkt. 1, ¶ 11; Leavelle Aff. ¶ 3). Plaintiff alleges that Leavelle either acted individually or on behalf of Defendant Express Jets, Ltd. (Dkt. 1, ¶ 11). Plaintiff also alleges that Leavelle held himself out as the agent working on behalf of Carolex. (Dkt. 1, ¶ 11).

Subsequent to the meeting, Tomayo expressed an interest in purchasing the aircraft. (Dkt. 1, ¶ 17). Consequently, Valdez submitted an offer on behalf of Plaintiff to purchase the aircraft, with the understanding that Plaintiff would purchase the aircraft and immediately resell it to Tomayo, keeping the difference as profit. (Dkt. 1, ¶ 18). Leavelle advised that Carolex had accepted Plaintiff's purchase offer with some minor changes, to which Plaintiff agreed. (Dkt. 1, ¶¶ 19-20). Plaintiff and Defendant Carolex signed the Offer to Purchase. (Dkt. 1, ¶ 28).

---

[1] Plaintiff is a Florida corporation with its principal place of business in Sarasota, Florida. Plaintiff alleges that Defendant Carolex is a Tennessee limited liability company with its principal place of business in Chattanooga, Tennessee, that Defendant Express Jets is a Delaware corporation with its principal place of business in San Antonio, Texas, and that Defendant Leavelle is domiciled in Texas. (Dkt. 1, ¶¶ 1-4). Defendants contend that Express Jets was a Colorado corporation and was administratively dissolved in 2005. According to Defendants, Jet Zone, LLC is a Texas limited liability company with its principal place of business in San Antonio, Texas and does business as Express Jets. (Dkt. 5, p. 2; Leavelle Aff. ¶¶ 3, 5, 10, 11).

Leavelle advised Plaintiff that Carolex had insisted that "the deal would be contingent upon a mutually acceptable and executed formal purchase agreement which was to be signed on February 25, 2008." (Dkt. 1, ¶ 20). Leavelle emailed the formal purchase agreement to Plaintiff on February 22, 2008, and Plaintiff advised Leavelle the same day that the purchase agreement was acceptable to Plaintiff with one "minor, immaterial" change. (Dkt. 1, ¶ 23). Plaintiff never heard back from Leavelle. (Dkt. 1, ¶¶ 24, 27).

Tomayo advised Valdez that Leavelle contacted him personally and offered to sell him the aircraft for a lower price provided that he close directly with Leavelle. As a result, Tomayo advised Plaintiff that he was no longer interested in purchasing the aircraft from Plaintiff and would deal directly with Leavelle. (Dkt. 1, ¶ 26). Defendant Carolex informed Plaintiff that Carolex had entered into a purchase agreement with "another purchaser" and that the Offer to Purchase was null and void. (Dkt. 1, ¶ 28). Plaintiff alleges that the "other purchaser" was Tomayo. (Dkt. 1, ¶ 29).

Defendants contend that Plaintiff's complaint should be dismissed for lack of personal jurisdiction.

### *Standard*

A federal district court employs a two-part analysis to determine whether it has personal jurisdiction over a nonresident defendant. *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). First, the Court determines whether the exercise of jurisdiction over Defendants is appropriate under a federal statute or Florida's long-arm statute. *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007); *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626-27 (11th Cir. 1996). If a statute authorizes jurisdiction, the Court must also examine whether exercising jurisdiction over Defendants comports with the Fourteenth Amendment's Due Process

Clause, "which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

Plaintiffs bear the burden of establishing a prima facie case of personal jurisdiction over Defendants, sufficient to withstand a motion for directed verdict. *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino,* 447 F.3d 1357, 1360 (11th Cir. 2006); *Sculptchair, Inc.*, 94 F.3d at 627. The facts alleged in the complaint are accepted as true, to the extent that they are not controverted by Defendants. *Id.* If, as here, Defendants dispute the allegations in the complaint with supporting affidavits, then the burden shifts back to Plaintiff to counter with affidavits or "other competent proof" to support the jurisdictional allegations. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1269 (11th Cir. 2002); *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). Where the evidence conflicts, all reasonable inferences must be construed in favor of Plaintiff. *Stubbs,* 447 F.3d at 1360.

## *Discussion*

### *I. The Florida Long-arm Statute*

Defendants contend that they are not subject to personal jurisdiction under Florida's long-arm statute because they do not "operate, conduct, engage in, or carry on a business or business venture" in Florida and do not have offices or agents in the state. (Dkt. 5, pp. 4-5). Defendants contend that in order to be subject to personal jurisdiction they must have "continuous and systematic" contacts in Florida. (Dkt. 5, p. 3).

Pursuant to Florida's long-arm statute, jurisdiction may be general or specific. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166–67 (11th Cir. 2005). Plaintiff

4

concedes that general jurisdiction requires that Defendants' contacts with Florida be continuous and systematic. (Dkt. 16, p. 2).[2] However, Plaintiff contends that it is asserting specific, not general, jurisdiction. Specifically, Plaintiff alleges three bases for jurisdiction under the Florida long-arm statute: (1) specific jurisdiction based on Defendants' alleged operation of a business in Florida, pursuant to Fla. Stat. § 48.193(1)(a); (2) specific jurisdiction based on Defendants' commission of a tortious act in Florida, pursuant to Fla. Stat. § 48.193(1)(b); and (3) specific jurisdiction based on Defendants' breach of a contract in Florida, pursuant to Fla. Stat. § 48.193(1)(g). Because the construction and application of the Florida Long-arm statute is a question of Florida law, its provisions must be construed in accordance with the Florida Supreme Court. *Horizon Aggressive Growth, L.P.*, 421 F.3d at 1166–67 (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990)).

### *a. "Conducting Business" in Florida*

To establish that a corporation was operating or conducting business in the state of Florida, either itself or through an agent, "[t]he activities of the [defendant] ... must be considered collectively and show a general course of business activity in the State for pecuniary benefit." *Sculptchair*, 94 F.3d at 627 (quoting *Dinsmore v. Martin Blumenthal Assocs., Inc.*, 314 So. 2d 561, 564 (Fla.1975)). In determining whether Defendants conduct business in Florida, relevant factors include "the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients." *Horizon Aggressive Growth, L.P.*, 421 F.3d at 1167 (internal citations

---

[2] The general jurisdiction provision of the Florida Long-arm Statute, Fla. Stat. § 48.193(2), states that "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."

omitted).

In support of their position, Defendants submit affidavits of Jason Leavelle, owner of Express Jets, and Joseph Prebul, owner of Carolex, stating that the Defendants do not "operate, conduct, engage in, or carry on a business or business venture in Florida" and do not "have an office or agent in Florida." (Dkt. 5, Leavelle Aff. ¶¶ 6, 7, 12, 13; Prebul Aff. ¶¶ 5, 6). The affidavits recite the requirements of Fla. Stat.§ 48.193(a). *Posner v. Essex, Inc. Co., Ltd.*, 178 F.3d 1209, 1215 (11th Cir. 1999).

Nevertheless, Plaintiff fails to produce competent evidence to contradict the factual assertions made by Defendants. Plaintiff neither alleges nor proffers evidence to contradict Defendants' assertion that they do not maintain offices or have agents in the state of Florida. Indeed, Plaintiff proffers no evidence that any of the defendants ever conducted any business in the state of Florida other than the transaction at issue in this lawsuit. Accordingly, Plaintiff has not established a sufficient basis for asserting personal jurisdiction over Defendants pursuant to Fla. Stat. § 48.193(1)(a).

### *b. Breaching a Contract in Florida*

Plaintiff also alleges jurisdiction pursuant to Fla. Stat. § 48.193(1)(g), which provides jurisdiction if the defendant, either personally or through an agent, has breached a contract in Florida "by failing to perform acts required by the contract to be performed in this state." Fla. Stat. § 48.193(1)(g). Plaintiff alleges in Count I of the Complaint that Defendants breached the "Offer to Purchase" entered into by Plaintiff and Carolex by initiating negotiations with and selling the aircraft directly to Tomayo. (Dkt. 1, ¶ 40).

The mere existence of a contractual relationship between a non-resident defendant and a Florida resident is insufficient to satisfy § 48.193(1)(g). *Travel Opps. of Ft. Lauderdale, Inc. v. Walter Karl List Mgmt., Inc.*, 726 So. 2d 313, 314 (Fla. 4th DCA 1998). Instead, "the contract itself must require performance in Florida." *Id.* at 314 (holding a sparse, three paragraph contract which gave Plaintiff the right to buy a customer list from Defendant for an indefinite time period insufficient under Fla. Stat. § 48.193(1)(g) because Defendant could have delivered the list to Plaintiff in Florida by placing them in the mail in Connecticut). "A contractual duty to tender performance to a Florida resident is not in itself sufficient to satisfy the statute." *Posner*, 178 F.3d at 1218.

In this case, the Offer to Purchase is silent as to the location of payment for and delivery of the aircraft. (Dkt. 1, ¶ 28; Dkt. 5, Ex. C). Where a contract is silent as to place of payment, Florida courts have consistently held that the place of payment is presumed to be the payee's place of business on a personal jurisdiction analysis. *Sendtec, Inc. v. Cosmetique, Inc.*, No. 8:07-cv-1643-T-24-TGW, 2008 WL 660297, at *3 (M.D. Fla. March 6, 2008) (citing *Global Satellite Commc'n Co. v. Sudline*, 849 So. 2d 466, 468 (Fla. 4th DCA 2003) and *Hartcourt Cos. v. Hogue*, 817 So. 2d 1067, 1070 (Fla. 5th DCA 2002)). Plaintiff alleges that the Offer to Purchase was signed by Plaintiff and Carolex. (Dkt. 1, ¶ 28). Eric Eckhardt, Plaintiff's president, avers that the contract was accepted by Leavelle on Carolex's behalf. (Eckhardt Aff. ¶ 8). Accordingly, the place of payment is presumed to be either Tennessee, Carolex's principal place of business, or Texas, Leavelle and Express Jet's principal place of business. Plaintiff has not sufficiently established that performance of the contract was to occur in Florida. Accordingly, personal jurisdiction may not be asserted pursuant to Fla. Stat. § 48.193(1)(g).

### c. *"Committing a Tortious Act" in Florida*

Plaintiff also alleges specific jurisdiction pursuant to Florida Statute § 48.193(1)(b), which authorizes the exercise of personal jurisdiction over an out-of-state defendant who commits a tortious act in Florida. On a motion to dismiss for lack of personal jurisdiction, the correct inquiry is "whether the tort as alleged occurred in Florida, and not whether the alleged tort actually occurred." *Machtinger v. Inertial Airline Servs., Inc.,* 937 So. 2d 730, 734 (Fla. 3d DCA 2006); *Walter Lorenz Surgical, Inc. v. Teague,* 721 So. 2d 358, 359 (Fla. 1st DCA 1998).

It is well-settled under Florida law that physical presence in Florida is not required in order to commit a tortious act in Florida. *Wendt v. Horowitz,* 822 So. 2d 1252, 1260 (Fla. 2002). A tortious act can occur in Florida "through the nonresident defendant's telephonic, electronic, or written communications into Florida," as long as the cause of action arises from the communications. *Wendt Id.* at 1260.

In addition, "jurisdiction may be found in certain instances where an out-of-state defendant commits a tort that produces an injury in Florida." *Horizon Aggressive Growth, L.P.,* 421 F.3d at 1168; s*ee also Rogers v. Nacchio,* 241 Fed. App'x 602, 606 (11th Cir. 2007) (asserting that "this section has been interpreted to include tortious acts committed outside of Florida that cause injury within Florida"); *Posner,* 178 F.3d 1209 at 1217 (stating that "[a]bsent a contrary decision by [the Florida Supreme Court]... we are bound... to follow this court's firmly established precedent, which interprets subsection (1)(b) to apply to defendants committing tortious acts outside the state that cause injury in Florida").

In its complaint, Plaintiff alleges that Defendants committed tortious interference with a contractual relationship or, in the alternative, tortious interference with an advantageous business

relationship between Plaintiff and Tomayo. (Dkt. 1, Counts II and III). Specifically, Plaintiff claims that Leavelle contacted Tomayo and offered to sell him the aircraft for a lower price, provided that Tomayo close directly with Leavelle and circumvent Plaintiff. (Dkt. 1, ¶ 26). Plaintiff alleges that Defendants urged Tomayo to breach his oral contract, or in the alternative abandon his business relationship, with Plaintiff. (Dkt. 1, ¶¶ 49, 57).[3] As a result of these actions, Plaintiff alleges that it was injured by losing a business opportunity. (Dkt. 1, ¶¶ 52, 59). As Plaintiff is a Florida corporation with its principal place of business in Sarasota County, Florida, the alleged injury to Plaintiff occurred in Florida. *Becker v. Hooshmand*, 841 So. 2d 561, 562 (Fla. 4th DCA 2003); *Williams v. Goldsmith*, 619 So. 2d 330 (Fla. 3d DCA 1993).

Defendants submit the affidavit of Jason Leavelle, which states that "[w]hen Flight Source, International, Inc. did not execute a formal purchase agreement by February 25, 2008, the Offer to Purchase became null and void pursuant to its terms, and Carolex moved on to another buyer for the Airplane." (Leavelle Aff. ¶ 23).[4] Nevertheless, at this stage, the inquiry is not whether the tort alleged *actually* occurred, but whether the tort *as alleged* occurred in Florida. *Machtinger*, 937 So. 2d at 734; *Walter Lorenz Surgical, Inc.*, 721 So. 2d at 359. To rebut Defendant's affidavits, Plaintiff has proffered an affidavit of its president, Eric Eckardt, who avers that "the seller and Mr. Leavelle entered into a contract with Flight Source for Mr. Tomayo's purchase of the 31A-114 from the seller, with Flight Source acting as broker." (Dkt. 16-2, Eckardt Aff. ¶¶ 2, 10). Eckardt also avers that "Mr. Leavelle convinced Mr. Tomayo to deal directly with himself and the seller in purchasing the 31A-114, cutting Flight Source out of the deal." (Eckardt Aff. ¶ 11). Where, as here, the evidence

---

[3]Plaintiff contends, and Defendants do not dispute, that Leavelle's acts are attributable to Express Jets and Carolex for the purposes of personal jurisdiction, as Leavelle acted as agent for Express Jets, and Express Jets acted as agent for Carolex. (Dkt. 16, pp.4-5, Leavelle Aff. ¶¶ 3, 4, 22).

[4]Plaintiff submits that the "other purchaser" was Tomayo. (Dkt. 1, ¶¶ 28-29).

submitted by Plaintiff and Defendants conflicts, all reasonable inferences must be construed in favor of Plaintiff. *Stubbs*, 447 F.3d at 1360. Construing the facts in Plaintiff's favor, Plaintiff's allegations are sufficient to bring Defendants within the scope of the Florida Long-arm Statute.

## *II. Due Process*

Even where jurisdiction exists under the Florida Long-arm statute, a defendant will not be subject to personal jurisdiction in Florida if there are not sufficient minimum contacts to satisfy due process. *Sculptchair*, 94 F.3d at 626. If minimum contacts exist, the Court must determine whether exercising jurisdiction over the defendants comports with notions of "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985). In this case, Plaintiff has not established that Defendants had sufficient minimum contacts with Florida to subject them to personal jurisdiction in Florida.

To constitute minimum contacts for purposes of specific jurisdiction consistent with due process, a defendant's contacts with the forum state must (1) be related to the plaintiff's cause of action or have given rise to it, (2) involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws; and (3) be such that the defendant should reasonably anticipate being haled into court in the forum state. *McGow v. McCurry*, 412 F.3d 1207, 1214 (11th Cir. 2005). In assessing the defendant's contacts with the forum state, the court examines the "quality and nature" of the defendant's activity in the state. *Cable/Home Comm. Corp.*, 902 F.2d at 858. "A significant single act or meeting in the forum state" may be sufficient, *id.*, but the contacts must not be merely "'random,' 'fortuitous,' or 'attenuated.'" *Burger King Corp.*, 471 U.S. at 486.

The first prong, whether the contacts are related to or have given rise to Plaintiff's cause of

action, is satisfied. Plaintiffs have alleged, and Defendants do not dispute, that Leavelle and Express Jets acted as agents for Carolex. (Dkt. 1, ¶¶ 5, 11, 12, 13, 14, 15). As discussed above, Leavelle served as the representative for Express Jets which in turn served as the broker for Carolex. (Dkt. 16, pp. 4-5, Leavelle Aff. ¶¶ 3, 4, 22). A corporate agent's actions are attributable to the corporate principal for purposes of personal jurisdiction, unless the agent was acting on his or her own behalf. *Sculptchair,* 94 F.3d at 628. Accordingly, for the purposes of personal jurisdiction, Leavelle's contacts with Florida are attributable to Express Jets and Carolex.

Plaintiff alleges that, through its agent Valdez, it initiated contact with Leavelle and informed him that Plaintiff had a buyer, Tomayo, who was interested in purchasing an aircraft. (Dkt. 1, ¶ 11). Plaintiff alleges that Leavelle traveled to St. Petersburg, Florida to meet with Valdez and Tomayo in order for Tomayo to inspect the aircraft owned by Carolex. (Dkt. 1, ¶¶ 10, 11). Plaintiff alleges that Carolex arranged for the aircraft to be transported to St. Petersburg for the meeting. (Dkt. 1, ¶ 12). According to Eric Eckhardt, Flight Source International, Inc.'s president, Leavelle "undertook to arrange for the pilot, fueling, and all necessary administrative arrangements needed to fly the 31A-123 into Tampa." (Dkt. 16, Eckhardt Aff. ¶ 6). Eckhard avers that "[a]s instructed by Mr. Leavelle in cooperation with Mr. Valdez, Mr. Tomayo wired $4,000.00 to Mr. Leavelle's bank to pay for the transportation" of the aircraft to Florida. (Dkt. 16, Eckhardt Aff. ¶ 6). Plaintiff alleges that subsequent to the meeting, Valdez and Leavelle engaged in negotiations for the purchase of the aircraft. (Dkt. 1, ¶¶ 18, 19, 20, 21).

Plaintiff's Complaint alleges that the aircraft transported to St. Petersburg for inspection was the Lear Jet 31A with serial number 114, owned by Carolex. (Dkt. 1, ¶¶ 8, 10, 12). Defendants contend, however, that the aircraft transported to St. Petersburg was a Learjet 31A with serial

number 123, owned by a different Express Jet client. (Leavelle Aff. ¶¶ 14, 19, 20). Plaintiff concedes that the aircraft transported to Florida was LearJet 31A-123, but contends that the Learjet 31A-123 "was intended to be, and in fact was, substantially similar to all of the 31As in which Mr. Tomayo was interested. Accordingly, it was substantially similar to the Lear Jet 31A serial number 114 ("31A-114"), the central aircraft in this dispute." (Eckhardt Aff. ¶ 5, 7). Nevertheless, Defendants acknowledge that Leavelle traveled to St. Petersburg to meet with Valdez and Tomayo regarding Tomayo's interest in purchasing a Learjet. Ultimately, as a result of the meeting and subsequent negotiations between Leavelle and Valdez, Plaintiff and Leavelle executed an Offer to Purchase a Learjet Model 31A, albeit with a different serial number, from Carolex. As Defendants' contacts with Florida are related to Plaintiff's cause of action, the first prong of the minimum contacts test is satisfied.

The second and third prongs of the minimum contacts test, purposeful availment and reasonable anticipation, are not satisfied. The mere existence of a contractual relationship "between a nonresident defendant and a Florida resident is not sufficient in itself to meet the requirements of due process." *Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1113 (11th Cir. 1990). In evaluating whether a nonresident defendant purposefully avails itself of the privilege of conducting activities in the forum State, courts look beyond the existence of a contractual relationship to other factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp*, 471 U.S. at 487 (finding that personal jurisdiction existed where defendant entered into a long-term franchise relationship with a Florida corporation).

In this case, unlike *Burger King*, the contract to purchase the 31A-114 contemplated a single

12

transaction, not the establishment of a long-term contractual relationship. The fact that the Offer to Purchase required the parties to execute a formal purchase agreement does not result in a long-term relationship. Aside from a single meeting in Florida in which Tomayo inspected the aircraft, there were no communications in Florida, as all of the communications and negotiations were handled by Valdez, who is located in Mexico. Plaintiff's argument that transportation of the aircraft to Florida at a cost of $4,000 bears little weight, as it was Tomayo, who is not a party to this action, who paid for the aircraft to be brought to Florida.[5] Although a single meeting can in certain circumstances be sufficient to constitute minimum contacts, in this case, the meeting did not involve "significant negotiations of important terms," which occurred only subsequently and resulted in the purchase of a different aircraft. *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 993 (11th Cir. 1986). Moreover, it was Valdez who initiated contact with the Defendants and who arranged the location of the meeting. (Dkt. 1, ¶¶ 10, 11). *Burger King Corp.*, 471 U.S. at 474-75 ("unilateral activity of those who claim some relationship with a nonresident defendant" cannot satisfy the purposeful availment requirement); *Lippman v. Apogee Fin. Group*, 745 F. Supp. 678, 682 (S.D. Fla. 1990) (one meeting which Plaintiffs selected would be held in Florida and a series of telephone calls and telecopies not sufficient for personal jurisdiction).

Defendants contacts with Florida were "random, fortuitous or attenuated contacts" and therefore insufficient to establish personal jurisdiction. *Jet Charter*, 907 F.2d at 1113. Defendants have not availed themselves of the privilege of conducting business in Florida such that they could reasonably anticipate being subject to litigation in Florida courts. Accordingly, Defendants are not

---

[5]Although Defendants do not make separate arguments as to each Defendant, it is noted that Plaintiff's argument that personal jurisdiction exists is particularly weak as to Carolex, as it is undisputed that the plane brought to Florida for inspection was not owned by Carolex.

subject to personal jurisdiction in Florida.

## *Conclusion*

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Defendants Carolex Air, LLC, Express Jets, Ltd, and Jason Leavelle's Motion to Dismiss Complaint for Lack of Personal Jurisdiction (Dkt. 5) is **GRANTED**, without prejudice to Plaintiff filing its action in a court having jurisdiction over Defendants. The Clerk is directed to close this case..

**DONE AND ORDERED** in chambers this 20th day of October, 2008.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record